UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SISER NORTH AMERICA,
INC., *et al.*,

              Plaintiff

v.

HERIKA G. INC., *et al.*,

              Defendant.

_____/

Civil Action No.: 16-14369
Honorable Gershwin A. Drain
Magistrate Judge Elizabeth A. Stafford

**ORDER AND OPINION GRANTING PLAINTIFFS'
MOTION TO COMPEL [ECF NO. 23], DEEMING ADMITTED REQUESTS
TO ADMIT, STRIKING THE OTHER DISCOVERY RESPONSES
AND ORDERING ATTORNEY
<u>MICHAEL L. FEINSTEIN TO PAY SANCTIONS</u>**

## I.    Introduction

Discovery is the lifeblood of litigation and, as such, it "must be initiated and responded to responsibly, in accordance with the letter and spirit of the discovery rules, to achieve a proper purpose (*i.e.*, not to harass, unnecessarily delay, or impose needless expense)." *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 360 (D. Md. 2008) (citing Fed. R. Civ. P. 26(g)).  Here, attorney Michael L. Feinstein failed to responsibly respond to discovery on behalf of Defendants Herika G. Inc., HG World Group, Inc., and Hernan Gonzalez.  The responses to discovery that he prepared, as

well as his objections on the parties' joint list of unresolved issues, were egregiously evasive, irresponsible, and contrary to the letter and spirit of the discovery rules.  Making matters worse, Feinstein prepared the responses despite not having filed an appearance in this Court—which was described as an ongoing sore spot for all of the other attorneys.  For those reasons, the Court grants plaintiffs' motion to compel, deems admitted plaintiffs' requests to admit, strikes defendants' other responses, and orders Feinstein to reimburse plaintiffs for the costs associated with the filing and prosecution of that motion.

## II.    Background

### A.

Plaintiffs Siser North America, Inc., and Siser S.R.L.'s complaint alleges that defendants illegally advertised and sold inferior counterfeit products under plaintiffs' trademarks, including "Cadflex," "Reflectall," "Easyweed," and "Siser," on internet websites like Amazon and eBay, thus diminishing plaintiffs' reputation, good will, and profits. [ECF No. 1, PageID 11-18].  The products are described as heat-transfer materials used to decorate all manner of clothing apparel.  [*Id.*, PageID 8].  Defendant Hernan Gonzalez is the principal of the defendant businesses—Herika G, Inc., and HG World Group, Inc.

2

In October 2017, plaintiffs filed their motion to compel, asking the Court to determine the sufficiency of defendants' answers and objections to requests to admit; to compel answers to interrogatories, including execution under oath; to compel responses to requests for production of documents; and to require consent to third-party subpoenas.  [ECF Nos. 23, 23-1].  The Honorable Gershwin A. Drain referred the motion for hearing and determination.  [ECF No. 24].  After defendants filed a response and plaintiffs a reply, the Court scheduled a hearing, ordered the parties to meet and confer, and ordered them to file a joint list of unresolved issues. [ECF Nos. 26, 28, 29].  The list of unresolved issues that followed is 84 pages.  [ECF No. 31].  The Court then ordered an evidentiary hearing and for defendants to show cause why they should not be sanctioned under Federal Rule of Civil Procedure 37(a)(5) and the Court's inherent authority, reasoning:

> A preliminary review of the list of unresolved issues leads the Court to believe that all or some of defendants' objections are boilerplate, evasive and sometimes nonsensical; that defendants have claimed that some documents are privileged without providing a privilege log, in violation of this Court's order, [ECF No. 29], and the authority cited therein; that defendants assert that discovery requests are unduly burdensome without providing affidavits or other evidence, in violation of this Court's prior order, [*id.*], and the authority cited therein; that defendants fail to state whether responsive material was withheld as a result of their objections, in violation of Federal Rule of Civil Procedure 34(b)(2)(C); that defendants,

3

without citing authority, suggest that they need not produce documents within their possession, custody or control, as required by Rule 34(a)(1), if plaintiff is able to obtain the same documents from third-parties; and that some or all of defendants' objections to requests for admissions were not made in good faith. In addition, defendants in some instances assert that they have produced all responsive documents, and in other instances state that no responsive documents exist, but plaintiff argues that those assertions are plainly false.

In several instances, defendants argue that plaintiff was required to file an amended motion to compel because they produced some documents after plaintiff's motion to compel was filed. This novel argument is nonsensical given the Court's order for the parties to meet and confer and to then file a joint list of unresolved issues. [ECF No. 29]. Inherent in that order is the assumption that some issues would be resolved, and that a hearing would take place to address only the unresolved issues. Defendants assertion that plaintiff was required to file an amended motion to compel, in addition to the list of unresolved issues, is frivolous and specious.

In the meet and confer order, the Court emphasized that the parties share the responsibility of securing the just, speedy and inexpensive determination of every action, and that the 2015 amendment to Federal Rule of Civil Procedure 1 was intended to discourage "over-use, misuse, and abuse of procedural tools that increase cost and result in delay." Fed. R. Civ. P. 1, advisory committee notes (2015). Defendants appear to be abusing the discovery process, improperly increasing the cost of this litigation, causing unnecessary delay, and wasting everyone's time.

[ECF No. 34, PageID 508-10].  The parties filed supplemental briefs in advance of the evidentiary hearing.  [ECF Nos. 35, 39].  The hearing, which was held on March 9, 2018, confirmed that the Court's concerns regarding defendants' discovery responses were well-founded.

4

**B.**

Defendants have pervasively relied upon boilerplate evasions such that basic disclosures have not been made.  For example, request for production of documents (RFP) nine requested: "Produce all documents sufficient to show all past and present channels of trade (for example, internet sales, in-person sales) and means of distribution by which all products have been sold or offered by any Defendant under or in connection with any of Plaintiff's Marks."  [ECF No. 31, PageID 420].  Defendants objected, "Overly broad and unduly burdensome."  [*Id.*].  RFP 25 requested, "Produce documents summarizing or sufficient to establish the volume of all sales of each of Defendant's products associated with any of Plaintiff's marks year by year from date of first sale to the present."  [*Id.*, PageID 422].  Defendants responded, "Siser invoices," [*id.*], none of which it produced.  In response to other RFPs, plaintiffs requested documents evidencing sales that defendants made using plaintiffs marks, defendants responded, "See Response to No. 24," but that response also stated, "Siser invoices."  [*Id.*, PageID 424, 426, 428; ECF No. 23-5, PageID 268].

After the parties' meet and confer, with respect to every one of the previously mentioned RFPs, defendants provided more empty mishmash: "Defendants' objection is proper in view of Plaintiffs' request.  Plaintiffs

5

never amended their arguments in their Motion to Compel, after Defendants produced all responsive and non-privileged documents in their possession.  Plaintiffs have received requested sales documents from third parties."  [ECF No. 31, PageID 422, 424, 426, 428, 430, 432, 434, 436, 438, 440].

As another example of defendants evading basic disclosures, they responded to a request for "documents sufficient to show all companies owned at least in part by [Defendant] Hernan Gonzalez," by stating, "Objection contained in public record."  [*Id.*, PageID 434].  Defendants did not waver after the meet and confer, asserting that evidence regarding Gonzalez's businesses were contained in the public record, "and therefore it is overly burdensome and unnecessary to ask Defendant to produce duplicates."  [*Id.*].  In the order requiring a meet and confer, the Court warned, "A party objecting to a request for production of documents as burdensome must submit affidavits or other evidence to substantiate its objections.  *In re Heparin Products Liab. Litig.*, 273 F.R.D. 399, 410-11 (N.D. Ohio 2011)."  [ECF No. 29, PageID 414].  Defendants did not provide any evidence of burden to support this or any other objection that alleged burdensomeness.  And defendants' objection to providing sufficient evidence within their possession, custody, or control of the identity of

Gonzalez's business is patently baseless.  Fed. R. Civ. P. 34(a)(1) (a party may request production of documents within "responding party's possession, custody, or control").

In response to requests to produce documents that support their own affirmative defenses, defendants repeatedly objected, "Asking for legal conclusions, work product doctrine and attorney-client privilege."  [ECF No. 31, PageID 440, 442, 444, 445, 449, 451, 452, 454, 456. 458, 459, 461, 463, 465, 467].  Defendants' argument about these requests in the joint list of unresolved issues are no better; they argue, "The documents Plaintiffs seek are protected by the work product doctrine and attorney-client privilege.  However, responsive and non-privileged documents have been produced."  [*Id.*, PageID 441, 443, 445, 448, 450, 452, 454, 455, 457, 457, 461, 463, 465, 466, 468].  Yet, defendants have never produced a privilege log and in fact have since disclaimed that they have any privileged documents in their possession that have been withheld.  [ECF No. 39, PageID 659].  They failed to provide a privilege log despite the Court's prior order that warned, "[T]o to the extent that defendants claim privilege, they must provide a privilege log as described in Fed. R. Civ. P. 26(b)(5)(A)(ii). They may also seek a protective order. See E.D. Mich. LR 26.4."  [ECF No. 29, PageID 415].

7

In addition, in plaintiffs' brief in response to the order for an evidentiary hearing, they denied that defendants had produced all responsive non-privileged documents in their possession, and specifically had not produced any documents in response to the RFPs related to defendants' affirmative defenses. [ECF No. 35, PageID 513-17]. Defendants did not dispute plaintiffs' assertion in their reply, but they stated that they produced over 15,000 pages of their sales documents after the plaintiffs' brief was filed. [ECF No. 39, PageID 658-59]. In conjunction with producing the new documents, defendants served plaintiffs with an amended response to plaintiffs' first request for production of documents; this document, dated March 6, 2018, was produced for the Court at the hearing. [Ex. A]. It shows that, in response to plaintiffs' request for documents supporting defendants' affirmative defenses, defendants instruct plaintiffs to "[s]ee Siser and Chang Dae Invoices previously produced and the additional discovery has been produced with Bate Stamp Number 1 through 15,632." [*Id.*, Page 18].

But defendants do not know whether any of the documents they produced relate to any affirmative defenses. Gonzalez had an employee print documents from websites on which defendants sold products, but he testified, "[W]e print only what we could produce, we could not produce all

the documents." [ECF No. 42, PageID 738].  As a result, the production included obvious omissions; for example, there were no documents relating to sales on eBay.  [*Id.*, PageID 734-38].  Gonzalez was asked, "[Y]ou did not satisfy yourself that your employee did a reasonable job in reviewing these systems and producing these documents because you did not look at these documents, at all, yourself; is that a correct statement."  [*Id.*, PageID 739].  He replied, "Yes, I told my employee, I asked him to print and he be able to print and that's what we provided to The Court."  [*Id.*].

Defendants also admit that only about 20% of the 15,000 plus page production was responsive to plaintiffs' RFPs; perhaps 80% of the produced documents are completely irrelevant to this case as they do not relate to the sales of products bearing trademarks.[1]  [ECF No. 39, PageID 658; ECF No. 42, PageID 696-98].

When asked to "[p]roduce all documents concerning any complaints about products sold under any of Plaintiffs' Marks," defendants originally responded, "See documents previously produced."  [*Id.,* PageID 438; ECF No. 23-5, PageID 275].  But plaintiffs explain that no documents had been

---

[1] Plaintiffs also complain that the February 2018 production of 15,000 plus documents was entirely in PDF file format, and that it would cost $15,000 to $25,000 to convert them to usual format for sorting and analytics. Defendants will have to re-submit the discovery, after a reasonable inquiry, in usable form, as set forth in more detail below.

"previously produced" at the time that this response was given in August 2017, and that the subsequent production of 273 documents on November 27, 2017, did not include any records of customer complaints.  [*Id.*, PageID 438-39; ECF No. 23-5, PageID 275, 280].  As noted, defendants have since produced more than 15,000 additional documents, but they describe them as being related to their sales, not to customer complaints.  [ECF No. 39, PageID 658].  The March 2018 amended response to plaintiffs' requests, defendants' original response, "See documents previously produced," is unchanged, [Ex. A, Page 16], but there is still no evidence that they previously produced any evidence of customer complaints.

Another primary area of contention has been defendants' responses to requests to admit.  Defendants asserted in about 28 responses to requests to admit, "Object to the request to the extent it is overly broad, vague, ambiguous and indefinite."  [ECF No. 31, PageID 469, 473, 476, 478-99].  Contrary to defendants' objections, plaintiffs' requests to admit were highly specific and unambiguous, *e.g.*, "Admit that one or more Defendants resold the PVC Heat Transfer Film acquired from Chang Dae to customers in the United States," [PageID 468]; "Admit that none of the Defendants purchased product with the designation SISER CADFLEX directly from Plaintiffs," [PageID 473]; "Admit that one or more Defendants

10

purchased product from a source in Asia which Defendant(s) then sold in the United States under the Siser 'ReflectAll' trademark," [PageID 476]; "Admit that as of September 24, 2015, one or more Defendants were selling vinyl products in the U.S.A. under one or more of Plaintiffs' Marks," [PageID 483]; "Admit that Chang Dae sent commercial invoice CD-1516-01, dated April 22, 2015, to Herika G in the amount of U.S. $98,659.91 for the delivery of one or more heat transfer films," [PageID 484]; "Admit that Defendant(s) resold heat transfer films associated with invoice CD -14053 to customers in the United States under one or more of Plaintiffs' Marks," [PageID 495].

Making matters worse, Gonzalez's testimony during the evidentiary hearing made clear that defendants objected to or denied at least some of the requests to admit that should have been answered in the affirmative. Request to admit 96 asked, "Admit that one or more Defendants sold Siser Easyweed to customers in the United States." [ECF No. 31, PageID 479]. Despite defendants' earlier objection, Gonzalez testified that he did sell Siser Easyweed to customers in the United States. [ECF No. 42, PageID 746]. Plaintiffs asked defendants to "[a]dmit that one or more Defendants purchased product from Chang Dae under the designation "PU HEAT TRANSFER FILM." [ECF No. 31, PageID 481]. Despite the earlier

11

objection, Gonzalez admitted that this was true.  [ECF No. 42, PageID 747].  Asked why he had objected to this request to admit, Gonzalez responded, "I'm not a lawyer, sir, I cannot respond for my lawyer."  [*Id.*].

Defendants denied request to admit 100, which requested that they "[a]dmit that Siser terminated Defendants' status as an authorized distributor to Equador in 2016."  [ECF No. 23-3, PageID 247].  That denial was false; Gonzalez admitted during the hearing that he was terminated as an authorized distributor to Ecuador in 2016.  [ECF No. 42, PageID 741, 748-49].

The above are only examples of defendants' failure to responsibly respond to discovery in accordance with the letter and spirit of the discovery rules; their failures were ubiquitous.  And the record demonstrates that Feinstein was primarily responsible for the egregious manner in which defendants have engaged in discovery.

**B.**

Defendants' principal place of business is in Florida, and Gonzalez hired Feinstein, who is also based in Florida, to represent him.  Both Feinstein and attorney Michael Smith describe Smith as "local counsel." [ECF No. 42, PageID 756, 761].  At the hearing, Smith described himself as having had no authority to narrow the unresolved issues because of his

12

designation as local counsel.  [*Id.*, PageID 761].  Feinstein, in contrast, disputed this Court's description of him as having been the attorney driving the discovery responses on behalf of the defense; he asserted that he and Smith "worked hand-in-hand."  [*Id.*, PageID 756].  The evidence shows that Feinstein independently prepared the discovery responses and gave Smith little, if any, opportunity to contribute to the discovery responses served on plaintiffs.

Feinstein served plaintiffs' counsel with the initial discovery responses in August 2017 via email, but Smith's electronic signature is provided on them.  [ECF No. 23-2, PageID 229; ECF No. 23-3, PageID 252; ECF No. 23-4, PageID 239-60; ECF No. 23-5, PageID 279-80].  Feinstein's electronic signature is also included with this caveat: "Pro Hac Vice Admission to be Forthcoming."  [*Id.*].  Feinstein acknowledged at the hearing that he prepared all of the discovery responses, and that at least some of the discovery responses were served without Smith having an opportunity to perform any editing.  [*Id.*, PageID 716, 756-57].  Smith first said that he did not believe that he had seen any discovery responses before they were served, but then stated that he could not recall.  [*Id.*, PageID 707-08].  In a September 2017 letter to Smith, plaintiffs' counsel wrote, "You advised us that you personally had no role in the preparation or

13

review of the responses, which were signed in your name by Michael

Feinstein, without your consent."  [ECF No. 23-7, PageID 296].

Feinstein admits that he signed Smith's name to discovery

responses, [ECF No. 42, PageID 716], and the evidence shows that he

continued to do so until the eve of the hearing.  Plaintiffs' counsel stated at

the hearing that the initial copy of the March 2018 amended responses to

the requests for production of documents included Smith's signature, but

that a revised copy has been served because "Mr. Smith never approved

his signature on this." [*Id.,* PageID 682].  She presented an email dated

March 8, 2018, the same date as the hearing, in which Feinstein's assistant

provided a "Corrected Amended Response to Plaintiffs' First Request for

Production of Documents removing Mr. Smith's name as a signer of the

document." [Ex. B].  Smith confirmed that he did not see the March 2018

amended response to the first request for production of documents before

they were served, and he did not sign it.  [ECF No. 42, PageID 708

In their motion to compel, Plaintiffs' counsel alleged that Smith told

them that he did not authorize his signature and was embarrassed by the

discovery responses.  [ECF No. 23-1, PageID 221].  In response,

defendants did not dispute that allegation, but asserted, "The signature of

local counsel on discovery documents was utilized to facilitate efficient

service of Defendants' discovery responses while Defendants' primary counsel prepared admission paperwork." [ECF No. 26, PageID 350]. Feinstein was referred to as "lead counsel" on the same page. [*Id.*].

All of this evidence undermines Feinstein's assertion that the discovery responses were prepared by him and Smith hand-in-hand. The evidence shows that Feinstein prepared and served the discovery responses, and added Smith's signature without Smith's having even reviewed the responses. And Feinstein did this without having been admitted to practice law in this Court, or having made an appearance for this case.

Smith and plaintiffs' counsel all state that, at the August 2017 scheduling conference, Judge Drain said that Feinstein needed to make an appearance as soon as possible. [ECF No. 42, PageID 758]. This was documented in plaintiffs' counsel's September 2017 letter to Smith. She wrote, "We further discussed the fact that, at our scheduling conference on August 14, Judge Drain expressed his desire that Mr. Feinstein enter an appearance in this case very quickly." [ECF No. 23-7, PageID 296]. But court records show that Feinstein did not apply to be admitted to practice in the Eastern District of Michigan until December 5, 2017; he was admitted on January 4, 2018, and filed his appearance in this case the following day.

15

Feinstein's explanation for taking so long to gain admittance and file his appearance is wanting.  "That's just my office, my own fault, Your Honor.  It wasn't done purposely or to disregard any Order of this Court.  It was just being a small law firm and dropping the ball on timeliness.  That's all I can say."  [ECF No. 42, PageID 759].

Plaintiffs' counsel described Feinstein's failure to seek admission and appear in the case was a "constant burden" as they did know if he would ever be admitted and they were concerned that he was not subject to the jurisdiction of the Court.  [*Id.,* PageID 760].  In their September 2017 letter, plaintiffs' counsel noted that the letter was directed to Smith only because Feinstein was still not an attorney of record in the case.  [ECF No. 23-7, PageID 296].  Plaintiffs' counsel emphasized that Feinstein's failure to appear in the case was an impediment.  "As we expressed during our call, we need to have a defense counsel who can speak for defendants and otherwise serve as an interface between defendants and our side, for without such a counsel, this case is going to languish."  [*Id.*, PageID 296-97].  According to the September 2017 letter, Feinstein's absence prevented them from addressing a "host of discovery concerns," and Smith had told plaintiffs' counsel that he would recommend to Feinstein that defendants supplement their discovery responses.  [*Id.,* PageID 297-98].

After a "repeated drumbeat" from plaintiffs' counsel that they would not engage with Feinstein until he was admitted in this Court, [ECF No. 42, PageID 767-68], plaintiffs' counsel wrote an email to Smith insisting that only counsel of record participate in the parties' upcoming December 2017 meet and confer.[2]  Despite this, Feinstein and Smith stated at the hearing that they expected Feinstein to be able to participate in the meet and confer by telephone, and Feinstein faulted plaintiffs' counsel for not allowing him to participate: "They knew that I was going to make myself available.  That was a very important opportunity to have some serious dialogue and communication at that time."  [*Id.*, PageID 765].  Yet, Smith agreed that Feinstein's lack of appearance had been an ongoing "sore spot" since at least the scheduling conference with Judge Drain in August 2017, and that the December 2017 meet and confer was a "non-starter" as a result.  [*Id.*, PageID 765-66].

Thus, Feinstein knew for months that Judge Drain and the attorneys of record were anxious for him to make his appearance on behalf of defendants for months, and that plaintiffs' counsel would not communicate

---

[2] This email was shown to the Court in electronic form during the hearing. It stated, "Frank, it's been a week since I first requested dates for our in-person meet and confer.  Schedules are tight.  It is appropriate that the meeting only include counsel of record and we're happy to host it at our offices."  [ECF No. 42, PageID 772].

with him directly until he had done so.  Despite his protestations, he could

not have been surprised when plaintiffs' counsel would not confer with him

in December.  And Feinstein had to know that his failure to make an

appearance was inhibiting productive resolution of the discovery disputes.

## III.    Analysis

### A.

Several rules are implicated by the allegations of discovery abuses at

issue here.  First, "every discovery request, response, or objection must be

signed by at least one attorney of record in the attorney's own name" to

certify that to the best of the attorney's "knowledge, information, and belief

formed after a reasonable inquiry," the responses were complete, correct at

the time made, consistent with the law, and nonfrivolous.  Rule 26(g).  "The

term 'response' includes answers to interrogatories and to requests to

admit as well as responses to production requests."  Fed. R. Civ. P. 26

Advisory Committee Notes (1983 Amendment).  An objective standard, the

"duty of 'reasonable inquiry' is satisfied if the investigation undertaken by

the attorney and the conclusions drawn therefrom are reasonable under the

circumstances."  *Id.*  Rule 26(g) "requires a court to impose sanctions for

any violation without 'substantial justification.'"  *Jones v. Illinois Central R.*

*Co.*, 617 F.3d 843, 854 (6th Cir. 2010) (citing Rule 26(g)).  A violation of

Rule 26(g) triggers sanctions that include an order to pay the opposing party's reasonable expenses (including attorney's fees) caused by the violation.  Rule 26(g)(3).

Here, no attorney of record signed any of the discovery responses. Feinstein signed Smith's name without Smith's permission, and Feinstein signed his own name "Pro Hac Vice Admission to be Forthcoming."  [ECF No. 23-3, PageID 252; ECF No. 23-4, PageID 239-60; ECF No. 23-5, PageID 279-80].  Under the Court's local rules, "*Pro hac vice* admission is not permitted."  E.D. Mich. LR 83.20(c)(1).  So the discovery responses were unsigned by an attorney of record who was permitted to practice law in this Court.  *See* Rule 83.20.

Nor were the discovery responses served after a reasonable inquiry. As noted, even at the time of the evidentiary hearing, neither Feinstein nor defendants had reviewed the document production to assure that it was complete or responsive to the specific document requests.  Also, requests to admit were objected to or denied when a reasonable inquiry would have revealed that they should have been admitted.

Rule 26(g)(2) requires a court to strike a discovery response if is it is unsigned "unless a signature is promptly supplied after the omission is called to the attorney's or party's attention."  As early as September 2017,

19

plaintiffs' counsel called attention to the Smith's statement to them that the August 2017 discovery responses were signed without Smith's permission. [ECF No. 23-7, PageID 296].  After that, only the responses to the requests for production of documents were amended.  [Ex. A]. The responses to the requests to admit and interrogatories are stricken under Rule 26(g)(2) for lack of signature, and all of the responses are deemed to have been served without a reasonable inquiry, in violation with that rule.

**B.**

Plaintiffs ask the Court to deem the request for admissions admitted. Federal Rule of Civil Procedure 36 governs requests for admissions.  It provides, "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  Rule 36(a)(3).  Here, neither Gonzalez nor an attorney of record signed the answers to the request to admit, deeming the requests admitted.

But district courts have the discretion to permit the withdrawal of such admissions.  "A matter admitted under this rule is conclusively established unless the court, *on motion*, permits the admission to be withdrawn or amended."  Rule 36(b) (emphasis added).  Even without a formal motion,

admissions may be withdrawn if doing so would permit the presentation of the case on its merits and would not prejudice the requesting party. Rule 36(b); *United States v. Petroff–Kline*, 557 F.3d 285, 293–94 (6th Cir.2009); *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 154 (6th Cir.1997). Deeming matters admitted instead of allowing withdrawal is disfavored when the admissions "would practically eliminate any presentation on the merits of the case." *Rilely v. Kurtz*, 194, F.3d 1313, 1999 WL 801560, at *3 (6th Cir.1999) (unpublished) (citation and internal quotation marks omitted). There is a strong preference for adjudicating cases on the merits rather than on a failure to timely file answers to requests for admissions. *Kerry Steel*, 106 F.3d at 154; *Bell v. Konteh*, 253 F.R.D. 413, 416 (N.D.Ohio 2008).

Based on that preference, the Sixth Circuit found that the district court in *Kerry Steel* had the discretion to rely on statements made at oral argument to deem the admissions withdrawn, even though no formal motion to withdraw had been filed. *Kerry Steel*, 106 F.3d at 153–54. In *Bell*, the court cited the preference for adjudication on the merits when it reluctantly granted a motion to withdraw admissions that was not filed until four months after the answers were due. *Bell*, 253 F.R.D. at 415–16.

21

This case is distinguishable from *Kerry Steel* and *Bell* because defendants have not moved to withdraw their admissions, formally or informally.  To the contrary, Feinstein argued at the hearing that the denials and objections to the requests for admissions were proper and offered in good faith.  [ECF No. 42, PageID 714-15, 718].  Defendants failed to request to withdraw their admissions even when it became evident during the hearing that their answers to the request to admit were legally unsound.

First, the Court emphasized to Feinstein that no attorney knowingly signed some of the discovery responses and that they were signed without Smith having an opportunity to review them.  [*Id.*, PageID 723-24].  After that, plaintiffs' counsel elicited testimony from Gonzalez that demonstrated that defendants' objections and denials to at least some of the requests to admit were baseless.  [*Id.*, PageID 744-49].  Then, citing *Erie Ins. Prop. & Cas. Co. v. Johnson*, 272 F.R.D. 177 (S.D.W. Va. 2010), plaintiffs argued that the requests to admit should be deemed admitted because of defendants' discovery abuses.  [*Id.*, PageID 755].  Plaintiffs requested that the Court include in an order that all of the requests to admit at issue in the joint statement of issues be deemed admitted under Rule 36(b)(3).  [*Id.*, PageID 773].  Given the opportunity to respond to this and the other specific requested relief, Feinstein stated, "[W]e're fine."  [*Id.*, PageID 775].

22

Defendants have thus not requested in any manner that their admissions be withdrawn.

The Court cannot *sua sponte* withdraw the admissions for defendants. *Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991) (rejecting argument that court has discretion to withdraw admissions *sua sponte*); *Quasius v. Schwan Food Co.*, 596 F.3d 947, 952 (8th Cir. 2010) (declining to require court to *sua sponte* allow withdrawal of admissions); *Jacobs v. Elec. Data Sys. Corp.*, No. 2:05CV925-MHT, 2006 WL 3742202, at *2 (M.D. Ala. Dec. 18, 2006) ("As Rule 36(b) expressly provides for withdrawal only 'on motion,' the court will not *sua sponte* withdraw Jacobs's admissions.").

The Court also relies upon authority that a response that does not comply with Rule 36(a) may be deemed admitted.  "The general power of the district court to control the discovery process allows for the severe sanction of ordering a matter admitted when it has been demonstrated that a party has intentionally disregarded the obligations imposed by Rule 36(a)." *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981).  *See also Erie Ins. Property & Cas. Co.*, 272 F.R.D. at 184 (deeming admitted requests because plaintiff "failed to meet Rule 36(a)'s requirement that it make reasonable inquiry and effort into its response.").

23

For these reasons, the Court deems plaintiffs' requests for admission admitted.

### C.

Federal Rules of Civil Procedure 33, 34 and 37 are also implicated. Boilerplate objections are legally meaningless and amount to a waiver of an objection. *Strategic Mktg. & Research Team, Inc. v. Auto Data Sols., Inc.*, No. 2:15-CV-12695, 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017) ("Boilerplate or generalized objections are tantamount to no objection at all and will not be considered by the Court.").  And since none of the responses were served with a legitimate attorney signature within 30 days, they were all untimely.  "As a general rule, failure to object to discovery requests within the thirty days provided by Rules 33 and 34 constitutes a waiver of any objection."  *Kuriakose v. Veterans Affairs Ann Arbor Healthcare Sys.*, No. 14-CV-12972, 2016 WL 4662431, at *2 (E.D. Mich. Sept. 7, 2016) (citation and internal quotation marks omitted). *See also Equal Employment Opportunity Comm'n v. Indi's Fast Food Rest., Inc.*, No. 3:15-CV-590-JHM, 2017 WL 1658934, at *3 (W.D. Ky. May 1, 2017).

Evasive and incomplete answers to discovery requests are tantamount to no answer at all. *See Laukus v. Rio Brand Inc.,* 292 F.R.D. 485, 502 (N.D. Ohio 2013); *Beard v. Hawkins*, No. CV 14-13465, 2016 WL

24

6787628, at *7 (E.D. Mich. Sept. 13, 2016), *adopted in relevant part*, 2016 WL 6518490 (E.D. Mich. Nov. 3, 2016).  Rule 37 allows sanctions against a party or attorney who fails to answer interrogatories or requests for production of documents.  Rule 37(a)(3)-(5); Rule 37(d). The permitted sanctions include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party

Rule 37(b)(2); Rule 37(d)(3).  Monetary sanctions are also required in most cases.  "[T]he court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Rule 37(d)(3).

The Court finds that monetary sanctions against Feinstein are warranted.  The other permitted sanctions would punish defendants, and "[t]o the extent possible, sanctions should be imposed only upon the person or entity responsible for the sanctionable conduct.  The sanctioning of a

25

party, as opposed to the party's counsel, requires specific findings that the party was aware of the wrongdoing." *Kansas Wastewater, Inc. v. Alliant Techsystems, Inc.*, 217 F.R.D. 525, 532, n. 28 (D. Kan. 2003) (internal citation and quotation marks omitted). *See also White v. Gen. Motors Corp.,* 908 F.2d 675, 685–86 (10th Cir. 1990) ("We agree with those circuits that have expressed the view that the sanctioning of a party requires specific findings that the party was aware of the wrongdoing.").

Here, Feinstein prepared and served all of the offending responses, and was the only individual to knowingly sign any of them. There is no evidence that Gonzalez was aware that the responses violated the discovery rules. The Court thus denies plaintiffs' request to order that all affirmative defenses have been waived. [*See* ECF No. 42, PageID 773]. But Feinstein must serve Gonzalez with a copy of this order, and both Feinstein and Gonzalez are warned that future violations may result in harsher sanctions, including a possible default judgment against defendants.

## IV.   Conclusion

Based on the foregoing and other evidence presented on the record during the evidentiary hearing, the Court orders as follows:

- Plaintiffs' requests for admissions [ECF No. 23-3] are deemed

  **ADMITTED**;

- Defendants' responses to plaintiffs' interrogatories and requests for

  production of documents [ECF No. 23-4, 23-5] are **STRICKEN**.

  Defendants must serve amended responses to those documents no

  later than **April 13, 2018**, after reasonable inquiry and with proper

  signatures;

- All objections to plaintiff's interrogatories and requests for production

  of documents are **WAIVED,** so defendants must fully produce all

  requested documents, including all documents relating to their sale of

  products advertised or sold with plaintiffs' trademarks, and all

  customer complaints about the heat transfer products sold by

  defendants with plaintiffs' trademarks;

- All electronic documents **SHALL** be produced in the manner in which

  they are ordinarily maintained or in a reasonably usable form or forms

  for searching, sorting and analysis. Rule 34(b)(2)(E)(iii).  If

  defendants do not serve reasonably usable documents by April 13,

  2018, plaintiffs may send a forensic accounting expert to defendants'

  facilities to download the relevant documents in a usable form.

  Defendants and their employees shall provide access and reasonable

assistance in this effort.  Defendants shall pay all expenses
associated with the forensic accounting expert obtaining the
documents.  Plaintiffs are otherwise responsible for the experts'
costs;

- Defendants' document production must include all Google emails and
  attachments from email accounts: companyhg@gmail.com;
  hgworld@gmail.com; ventashgworld@gmailcom and any other
  business email account used by defendants that are responsive to
  plaintiffs' RFPs.  In a proposed order delivered to the Court, plaintiffs
  included a host of proposed key words, but the connection between
  many of the proposed key words and the RFPs or plaintiffs' complaint
  was not evident.  Some of the proposed key words appeared overly
  generic, and defendants have been given no opportunity to address
  plaintiffs' proposed key words.  The Court has thus limited the key
  words, as set for the below.  Defendants must produce all non-
  privileged emails and associated attachments that include at least
  one or more of the following key words (singular, possessive, or
  plural and without regard to case) in either English or the Spanish
  equivalent:

  o Chang Dae

- o complain* (including complaint or complaining)

- o copy right or copyright or DMCA

- o dealer* (including dealership)

- o distributor* (including distributorship) or

- o Easy Weed or EasyWeed

- o Ecuador or Italy or Japan or China or Korea

- o film, vinyl or polyurethane

- o Cadflex

- o heat transfer or heattransfer or heatransfer

- o heatpress or heat press

- o infring* (including infringe, infringement, and infringing)

- o phony or fake or knockoff or not real or counterfeit

- o Reflect All or ReflectAll

- o Siser* (including Siser's, siserna, siserna.com, siser.com or Sisers)

- o terminat* (including terminate, terminated or terminating)

- o thermo transfer or thermotransfer

- o trade mark or trademark

If plaintiffs believe that this list is insufficient, they must meet and confer with defense counsel in an attempt to agree on additional key

words.  If there is no agreement, the parties may request a
conference with the Court;

- Defendants **SHALL** identify any emails and attachments withheld due
to privilege on a privilege log;

-  Feinstein **SHALL** reimburse plaintiffs for all reasonable fees and
costs incurred in connection with researching and drafting Plaintiffs'
motion to compel, researching and drafting plaintiffs' reply brief,
engaging in the December 2017 meet and confer, drafting the parties'
joint list of unresolved issues, preparing submissions in response to
the Court's Order to show cause and preparing for and attending oral
argument on March 9, 2018.  Plaintiffs' counsel shall file a bill of costs
with a supporting affidavit or declaration by April 6, 2018.

- Feinstein **SHALL** serve Gonzalez with a copy of this order, and both
Feinstein and Gonzalez are **WARNED** that future violations may
result in harsher sanctions, including a possible default judgment
against defendants.

The parties are warned that the filing of objections to a magistrate
judge's ruling on a non-dispositive motion does not stay the parties'
obligations under the order.  *See* E.D. Mich. LR 72.2 ("When an objection is
filed to a magistrate judge's ruling on a non-dispositive motion, the ruling

remains in full force and effect unless and until it is stayed by the

magistrate judge or a district judge.").

**IT IS SO ORDERED.**

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: March 23, 2018

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties' attention is drawn to Fed. R. Civ. P. 72(a), which

provides a period of 14 days from the date of receipt of a copy of this order

within which to file objections for consideration by the district judge under

28 U.S.C. § 636(b)(1).

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served
upon counsel of record and any unrepresented parties via the Court's ECF
System to their respective email or First Class U.S. mail addresses
disclosed on the Notice of Electronic Filing on March 23, 2018.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager